## MARTHA A. WALKER

*v.*

## GEORGE W. DOANE *et al.*

*Filed at Springfield November 25, 1889.*

1. APPEAL—*whether a freehold involved—bill for dower.* A bill for dower in real estate involves a freehold. When the right of dower is admitted to all of certain lots except one, and as to that the widow's right to the estate is put directly in issue, and when the trial court denies her right to dower in such lot, but gives her dower in the other lots, subject to the lien of a judgment, etc., an appeal from the decree by the widow involves a freehold, and lies directly to this and not to the Appellate Court.

2. DEED OF TRUST—*to secure a cause of action—construed—as to the extent of it.* After the recovery of a judgment against certain parties, and pending an appeal to this court, A, one of the judgment debtors, together with his wife, for the purpose of releasing certain of his lands from the lien of the judgment, gave their deed of trust upon certain other lands to secure the payment of the judgment in case of its affirmance, or of any other judgment that might be rendered in such suit, or in any other suit brought upon the same cause of action. The judgment already obtained was reversed, and the suit was abandoned by a neglect to have the cause reinstated in the trial court in proper time, and A having died, a new suit was brought against his surviving partners, in which the plaintiffs recovered judgment: *Held,* that the deed of trust was intended to secure the payment of the cause of action in case of a judgment thereon, and that the lots embraced in the deed were liable for the payment of the latter judgment against A's surviving partners.

3. PARTIES—*in suit upon the covenants in a lease, in case of the death of some of the parties.* In an action upon the covenants in a lease, the covenantees are the proper plaintiffs and the covenantors the proper defendants; and in case of the death of some of the parties thereto, the action must be brought and judgment recovered by or against the survivors.

4. JUDGMENT ON DEMURRER—*whether conclusive of the facts.* The trial court sustained a demurrer to certain pleas, and this court, on appeal, reversed the judgment of that court, holding that the pleas presented a valid defense: *Held,* that the judgment of this court was not that the facts stated in the pleas were true, and that it left the parties the right to contest the truth of the pleas.

5. DOWER—*before assignment—character of the right—duty of purchaser.* Until dower has been assigned, the dowress has no tenancy, but a mere right to have one-third of the land assigned to her in severalty. Her rights have no analogy to those of a joint tenant, and the rules applicable to that relation do not apply to her and a purchaser of the land. Such purchaser owes no other duty to the dowress than that imposed by the common rules of honesty and fair dealing. He is not required to sacrifice his own legal or equitable rights to protect those of the widow.

6. SAME—*prior incumbrance—rights of widow, and of third persons.* The owner of certain real property executed and acknowledged a deed of trust thereon. Subsequently, the grantor having in the meantime married, his wife signed the same, and it was re-acknowledged by them both: *Held,* that the delivery of the trust deed, in the absence of other proof, would be presumed to have been on the day of its date, and therefore that the wife had no dower in the premises as against the parties secured by the trust deed.

7. A, before his marriage, gave a mortgage on certain real estate to secure the payment of a judgment against him and his four partners, in case of its affirmance, and in case of a reversal, to secure whatever other judgment might be recovered on the same cause of action. He and two of the partners bought the interest of the other two, and gave them a bond of indemnity against liability. The judgment was reversed, and after the death of A another judgment was recovered on the same cause of action against the surviving members of the firm, and the widow of A claimed that such last named judgment should not be enforced against her dower rights, because it was entered by consent, and was obtained by fraud and collusion: *Held,* that unless the judgment was shown to be inequitable, the fact of its entry by consent was not material.

8. In such case, the fact that the parties to the suit before judgment agreed that no execution should be levied on the individual property of the mortgagor, and the plaintiff should look to the mortgaged premises, and other provisions made by A in his lifetime, for satisfaction, is not evidence that the judgment was entered by consent and collusion or fraud.

9. Where suit is brought against the surviving partners of a firm to establish a cause of action secured by the mortgage of a deceased partner, before his marriage, and thus render his widow's right of dower subject to the judgment, the widow will have the right to intervene in the suit at law for the purpose of having a proper defense interposed, and if she fails to do so it is doubtful whether she can afterward allege the invalidity of the judgment on the ground of negligent or even intentional omission on the part of the surviving partners sued.

10. Where a trust fund of a firm is set apart and deposited with a third person, to be used for the specific purpose of discharging a debt of the firm, the widow of a member of the firm will have no equitable right to have such fund appropriated for her use in relieving her dower of a mortgage given by her husband, before marriage, for the same debt, any further than in so far as it reduces the incumbrance. The other partners of the firm will have the right to have the fund applied as originally intended, in exoneration of their liability.

11. A purchaser of land at administrator's sale, and from the heirs of the intestate, subject to the widow's dower, by contract with a prior incumbrancer obtained a reduction of the amount of the lien : *Held*, that such purchaser could not charge the widow's dower with the full amount of such incumbrance, but only the amount paid by him.

APPEAL from the Appellate Court for the First District;—and also writ of error to the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

On the 4th day of April, 1881, Martha A. Walker exhibited her bill in the Superior Court of Cook county, against George C. Rand, John W. Doane, Samuel O. Walker, Edward S. Walker, Augustus L. Chetlain, Charles Fargo, Charles E. Brown, Thomas Brown and Henry G. Tucker, to have her dower assigned in lots 16, 17, 18, 19, 20 and 21, block 9, Fort Dearborn Addition to Chicago. The bill alleged the complainant's marriage with Martin O. Walker and his seizin of said lots during coverture, his death, her demand for her dower of the heirs of Martin O. Walker and their refusal to assign dower, the appointment of Augustus L. Chetlain as administrator of the estate of Martin O. Walker, the sale and conveyance of the premises above described by the administrator to George C. Rand, the conveyance of said premises by Samuel O. Walker and Edward S. Walker, the heirs at law of Martin O. Walker, and the vesting of their title, through certain mesne conveyances, in said Rand, Rand's title being in trust for John W. Doane; and it was also alleged that said premises were subject to a deed of trust executed by Martin O. Walker, in his life time, to Charles E. Brown, to secure, under certain

conditions in said deed of trust specified, a certain judgment against said Walker in favor of Tucker, Brown & Co. and which was then pending in this court on appeal, in case said judgment should be affirmed by this court, and also to secure any other judgment which might thereafter be rendered against him upon the covenants of the lease upon which the then existing judgment had been rendered.

The bill further alleged that said judgment had been reversed, and that this court had decided that no liability existed on the part of Walker in favor of said lessors; that no judgment could be recovered to enforce any liability on the covenants of the lease; that the deed of trust had ceased to be a lien on the premises; that said deed was executed by the complainant as surety for her husband, and that her obligation as such surety was extinguished by the judgment of this court, and therefore, that said deed of trust was a cloud upon her estate in the premises, which she asked to have removed and declared void.

The members of the firm of Tucker, Brown & Co. answered, admitting that said judgment had been recovered, but denying that there had been any final judgment as to the legal liability of the lessees, and alleging the commencement of a suit for the same causes of action in the Circuit Court of the United States for the Northern District of Illinois, and claiming that they were entitled to recover a judgment therein which, when recovered, would come within the conditions of said deed of trust.

Demurrers were filed by the other defendants, which were sustained as to two of them and overruled as to the others. Complainant thereupon amended her bill, and the amended bill was answered by all the defendants.

Tucker, Brown & Co. answered, setting up by way of supplement, that on the 8th day of October, 1881, they recovered a judgment in the said suit begun by them in the Federal Court for $92,171, and claimed that said judgment was secured by said deed of trust. Defendants Rand and Doane

neither admitted nor denied the complainant's demand for dower, but averred that it had been impracticable and impossible to set off her dower on account of the large amount of taxes, tax sales, mechanic's liens, and the trust deed to Tucker, Brown & Co., and they denied that the trust deed had ceased to be a lien, or that the complainant signed the same as surety for her husband, and they also set up the judgment recovered in the Federal Court. Defendants Samuel O. Walker and Edward S. Walker denied the complainant's demand for dower, and admitted the conveyances by which their title to said premises had become vested in Rand. Defendant Fargo answered disclaiming all interest in the premises. Defendant Chetlain denied having any money belonging to the estate, and also denied that he had been guilty of any fraud or misrepresentation in the premises, and averred that he had paid over to the creditors all the money received by him.

On the 25th day of September, 1882, Thomas Brown, claiming to be the sole owner of said judgment, filed his cross-bill, making the complainant and the other parties to the original bill parties defendant, and setting up in detail the facts in relation to the execution of said deed of trust and the recovery of said judgment in the Federal Court, and praying for a foreclosure of said deed of trust. During the pendency of the suit Thomas Brown died, and by stipulation his executors were substituted as parties to the suit.

The complainant also filed a supplemental bill, making John N. Jewett a party defendant, and alleging that the judgment of October 8, 1881, had been collusively entered, but that said Jewett had a sum of money in his hands held by him in trust to be applied upon any valid judgment which might be recovered upon the covenants of said lease and in exoneration of the complainant's dower, and praying that said Jewett be required to make discovery as to the amount of money so held by him, the source from which it was obtained, and how much of it he had applied upon said judgment, and that said judg-

ment be declared to be fraudulent as against the complainant, and be held to be no bar to or cloud upon the complainant's dower.

The facts, as disclosed by the evidence, are substantially as follows: On the 15th day of July, 1865, Tucker, Brown & Co., consisting of Chauncey Tucker, Thomas Brown and Henry G. Tucker, executed a lease, by which they demised to Martin O. Walker, Guy H. Cutting, Amos G. Throop, Robert McClelland and James Mullins, as partners under the firm name of the Carbon Hill Coal and Mining Company, for the term of ten years, certain lands in the State of Ohio, with the right to mine coal therefrom, said lands being chiefly valuable as mining lands. Said lease contained, among other things, covenants on the part of the lessees, to work the mines to their full capacity in a good and workmanlike manner, and to pay as royalties thirty-five cents per ton on all the coal mined. Shortly after the date of said lease the lessees commenced mining coal on said lands, and continued to operate said mines down to September, 1871, when they abandoned them, claiming that the merchantable coal was exhausted.

On the 28th day of June, 1866, and while said mines were being operated by said lessees, Walker purchased and received an assignment of the interests of Throop and McClelland in said firm, and executed to them an instrument, in which Cutting and Mullins, his other partners also joined, in which they covenanted to pay the rent and perform all the covenants of the lease, and save said retiring partners from all the liabilities of the firm.

During the time the mines were being worked, there was a dispute between the lessees and their lessors concerning certain of the demised premises of which the lessors refused to give possession to the lessees, and the lessees in consequence declined to pay the royalties reserved in the lease. In December, 1871, a suit was brought by the lessors against the lessees upon the covenants of the lease, the breaches assigned being

both the non-payment of the royalties reserved and the failure of the lessees to take out the amount of coal stipulated for in the lease. In defense of said suit the lessees pleaded, among other things, 1, an eviction from a portion of the demised premises, 2, an unlawful detention from the lessees of a portion of the demised premises, and, 3, a plea of set-off of the annual rental value of the demised premises so detained from the lessees. A demurrer to these pleas was sustained, and a trial of the cause on the issues formed on the remaining pleas resulted in a judgment against said lessees for $119,637. From that judgment Walker prosecuted an appeal to this court.

While said appeal was pending, Walker, in consideration of the release by Thomas Brown, who was then the sole owner of said judgment, of all the remaining real estate of said Walker from the lien of said judgment, executed to Charles E. Brown, as trustee, a deed of trust conveying the premises in question in this suit, and lots 22, 23 and 24 of the same block, the declaration of trust in said deed being as follows:

"In trust, nevertheless, to secure to said Thomas Brown, or to whomsoever may be the owner of said judgment and entitled in equity to the benefit of the aforesaid lien thereof, the payment of any execution that may be issued on said judgment, with the costs as aforesaid, in case the same shall be affirmed in the Supreme Court to which the same is now appealed, and in case the same shall be reversed or not affirmed, then for the payment of any judgment that may be thereafter ultimately rendered in said suit, or ultimately rendered in any other suit that may be thereafter brought and founded upon the covenants contained in the indenture of demise set forth in the pleadings in said suit and upon which covenants the said suit or action is founded."

Said deed of trust bears date April 15, 1874. Appended to it appears a consent by John Gray and George Taylor, the sureties on the appeal bond, to a release of Walker's other real estate from the lien of the judgment, and also the certificate

3—131 ILL.

of a notary public of an acknowledgment of said instrument by Walker, Gray and Taylor April 16, 1874. The name of the complainant appears, from a memorandum at the bottom of the deed, to have been interlined in the premises of the deed May 18, 1874, and her signature now appears at the bottom of the instrument, and there is appended to the deed a second certificate of the acknowledgment of the instrument by Martin O. Walker and the complainant, his wife, on said 18th day of May, 1874. The marriage between Martin O. Walker and the complainant took place May 9, 1874. There is no evidence apart from the deed itself as to the date of its actual delivery.

The appeal from said judgment resulted in a decision of this court reversing said judgment and remanding said cause to the Circuit Court with directions to that court to overrule the demurrer to said pleas. *Walker et al.* v. *Tucker et al.* 70 Ill. 527. The cause was never reinstated in the Circuit Court in pursuance of the mandate of this court, and no further proceedings were taken therein, said suit being thereby abandoned.

On the 28th day of May, 1874, Walker died intestate and insolvent, leaving him surviving the complainant, his widow, and his two sons, Samuel O. Walker and Edward S. Walker, his only heirs at law. The defendant Chetlain was appointed administrator. In 1875 said heirs quitclaimed their interest in the premises in question to defendant Fargo. In the meantime defendant Doane bought up nearly all the claims against the estate, and subsequently said premises were sold at administrator's sale and were struck off to defendant Rand for $5000, and on the same day Fargo conveyed his interest in said premises to Carrie Walker, who quitclaimed to Rand. Rand took title to said property as trustee for Doane, the latter being the real purchaser of the property.

Prior to the execution of said deed of trust, Walker had mortgaged lots 22, 23 and 24 to the Sears estate. This mortgage was foreclosed without making Charles E. Brown, the trustee, or Tucker, Brown & Co., parties defendant. The

equity of redemption of Tucker, Brown & Co., not being cut off by the foreclosure proceedings, was subsequently purchased by the Sears estate for $10,500, and those lots were thereupon released from the lien of the deed of trust. Also, on the 18th day of September, 1874, proceedings were instituted in the Superior Court of Cook county to enforce a mechanic's lien against said lot 19, and in those proceedings a decree was had and said lot was sold thereunder, and a master's deed was afterwards executed in pursuance of said sale conveying said lot to Edward A. Small.

In May, 1875, negotiations were opened for a settlement of the matters in controversy under the lease, for the sum of $50,000. Mullins, the manager of the mines, to effect such settlement, deposited with Mr. Jewett and Mr. Small, the former being at that time the attorney of Throop and McClelland and the latter the attorney of the Walker estate, the sum of $25,000, said money, as is claimed, being proceeds of said mines, said sum to be paid to Tucker, Brown & Co. and the deed of trust to stand as security for the remaining $25,000. Said negotiations failed, and it was then arranged that the money should remain in the hands of said Jewett and Small and should be invested in bonds, and should ultimately be used in extinguishment of whatever liability might be established under the lease.

The former suit not having been reinstated in the court below within two years from the time it was remanded by this court as provided by the statute, a new action in covenant was commenced by Thomas Brown and Henry G. Tucker, surviving partners of the firm of Tucker, Brown & Co., June 1, 1877, in the Circuit Court of the United States for the Northern District of Illinois, against Throop, McClelland and Mullins, as surviving partners, Cutting also being dead, to recover damages for breaches of the covenants of said lease. Only Throop and McClelland were served with process, Mullins being a non-resident of the State. On the 8th day of Octo-

ber, 1881, a judgment was rendered in said suit in favor of the plaintiffs therein for $92,171.32 and costs of suit.

Before the trial a stipulation was entered into by and between the attorneys of the parties to the suit, by which it was agreed that whatever judgment might be recovered should be satisfied out of the funds held by Jewett and Small as the proceeds of the mines, and from property belonging to Martin O. Walker at the time of his death, and that the individual property of Throop and McClelland should be released from the lien of such judgment. After the rendition of said judgment, an agreement was entered into between Thomas Brown, the owner of the judgment, and Doane as follows:

"Memorandum agreement between Thomas Brown and John W. Doane, October 8, 1881.

"Thomas Brown is to foreclose a deed of trust made by Martin O. Walker and wife to Charles E. Brown, on certain lots at the corner of Wabash avenue and Randolph street, in the city of Chicago, to secure a judgment therein mentioned, and which has been rendered by the Circuit Court of the United States for the Northern District of Illinois, this day, against Amos G. Throop and Robert McClelland, and to obtain a decree against Mrs. Walker to sell the property, said proceeding, however, to be conducted at the expense of said Doane.

"2. John W. Doane is to bid off the lots described in said deed, the title to which is now in George C. Rand, for twenty thousand dollars, or to pay that sum for a transfer of the dower right to the owner of the fee, and discharge the same of record.

"3. If Brown fails to procure said decree of sale, or to purchase the rights of dower, and transfer the same and discharge the same of record to the owner of the fee, so that the owner is required to purchase the dower and discharge the same of record, or so that the dower shall be assigned or assessed, then Brown is to pay towards the dower five thousand dollars ($5000), and Doane is to pay or meet the balance.

"4. In case a sale is made under such decree of foreclosure of those lots known as the Sears lots, on Randolph street, and the equity of redemption is purchased by Brown, he is to transfer it to Doane for $8000, at the option of said Doane to take the same or not, or Doane may purchase said lots at said sale for that sum without hindrance from Brown.

"5. When Brown receives the bonds or securities or funds now held by John N. Jewett (which he shall receive on the delivery of this agreement), and the said sum of twenty thousand dollars, and the sum of eight thousand dollars, at the option of said Doane as to the eight thousand dollars, the judgment against McClelland and Throop is to be entered satisfied, and it is not to be enforced against any other property described in said deed of trust.

"6. Said suit for foreclosure is to be commenced and prosecuted by Brown with diligence, and proceedings completed within five years, and if not completed within that time, he is to be considered to have failed as aforesaid, and shall at the end of that time cancel and discharge of record the judgment of the United States Circuit Court, Northern District of Illinois, in favor of Brown and against McClelland *et al.*, and the same shall be no longer a lien against any property mentioned in said deed of trust, except the Sears property.

"7. On the signing of this memorandum, John N. Jewett is to deliver the funds or bonds in his custody (except $1000 for Mullins), to said Brown, with the exception of $5000, which he is to retain and hold as security for the payment of the $5000 herein mentioned if Brown shall be required to pay the same. This is to be binding upon the heirs, administrators and assigns of both parties hereto.                THOMAS BROWN.

"I hereby ratify the above contract and agree to carry out its terms without any expense to said Doane.

THOMAS BROWN.<br>By W. C. GOUDY, his Attorney."

The time mentioned in the sixth paragraph of the foregoing instrument for completing the foreclosure proceedings was, by mutual agreement of the parties to said instrument, extended for a further period of five years, making ten years in all.

On the 8th day of November, 1881, John N. Jewett and Edward A. Small transferred to Thomas Brown, the owner of the judgment, bonds which had been purchased with the funds deposited with them, to the amount of $22,375.75, retaining a sufficient sum to discharge certain charges and expenses, and the further sum of $5000 for the purpose stipulated in said agreement.

In the suit in the Federal Court which resulted in the judgment above mentioned, the pleas which were held to be good by this court on the appeal from the former judgment were not interposed by the defendants. The action, which was originally in covenant, was, by leave of the court, changed to assumpsit, and the only plea filed was the general issue. The record of the trial and judgment is, in substance, that, by stipulation of the parties, a jury was waived and the cause was submitted to the court for trial upon the issue, and that the court, having heard the evidence and being sufficiently advised in the premises, found the issue for the plaintiffs and assessed their damages at $92,171.32, and that judgment was thereupon rendered upon said finding for that sum and costs. The evidence adduced at the hearing of the present case tends to show, that the only evidence offered on the trial of said suit at law in the Federal Court upon the question of damages related to the amount of coal actually taken from the mines in question by the Carbon Hill Coal and Mining Company, and that the damages assessed consisted only of the royalties upon the coal actually mined by said company at the rate stipulated for in the lease, with interest thereon at the rate of six per cent per annum. No evidence was offered in relation to the alleged failure of the lessees to take out the amount of coal stipulated

for, and no damages were awarded for any breach of that covenant of the lease.

The evidence also tends to show that John W. Doane, both before and after the filing of the original bill in this suit, paid out large sums of money in satisfaction of taxes and assessments on the lots in question, and also in redemption of said lots from tax sales and other charges thereon. Also that said Doane has improved said lots by erecting thereon large and expensive buildings.

The cause was heard in the Superior Court on pleadings and proofs, and upon such hearing a decree was rendered finding the facts in substance as above set forth, and also finding that defendants Charles Fargo, Samuel O. Walker, Edward S. Walker and Augustus L. Chetlain have received no rents or profits from said premises and are not liable for damages for the detention of the complainant's dower; that John W. Doane and George C. Rand received no rents and profits and made no use of said premises prior to the erection of said buildings thereon; that no demand was made for dower prior to the filing of the bill herein, and that they are not liable for damages for the detention of said dower prior to the filing of the bill; that John N. Jewett is not liable to the complainant for any of the funds received by him, and that he has rightfully transferred said funds in the manner above stated. It was thereupon ordered that the original, amended and supplemental bills be dismissed as to Charles Fargo, Samuel O. Walker, Edward S. Walker, Augustus L. Chetlain and John N. Jewett, and that they recover their costs.

It was further found that the $22,375.75 paid by Jewett to Brown and the $5000 retained by Jewett in pursuance of the agreement between Doane and Brown, and also the $10,500 received by Brown for the release of his equity of redemption in the Sears lots, should be credited on the judgment above mentioned recovered in the Circuit Court of the United States,

and that upon applying such credits, there remained due on said judgment the sum of $71,493.15.

It was thereupon decreed, that the complainant, Martha A. Walker, is entitled to an assignment of dower in said lots 16, 17, 18, 20 and 21, subject to the amount due upon said judgment, and also subject to the claim of said Doane to be reimbursed for a portion of his disbursements made in removing the liens for taxes and other charges on said lots, but that she was not entitled to dower in the improvements made upon said premises by said Doane; also that her right to dower in said lot 19 had been barred and cut off by the proceedings in the matter of said mechanic's liens and the sale of said lot thereunder.

It was further decreed, that said complainant, said George C. Rand and John W. Doane, or one of them or some person on their behalf, pay to the executors of Thomas Brown, deceased, said sum of $71,493.15, within thirty days of the entry of said decree, or that said lots 16, 17, 18, 20 and 21 be sold by the master in chancery, "and that at such sale said John W. Doane or Martha A. Walker be allowed to bid for said premises, according to the provisions of the agreement hereinbefore set forth between Thomas Brown and John W. Doane." And it was further ordered that the master make report of his action in making such sale, and that until the coming in of such report, the case be reserved for such further order and decree as may appear to the court to be equitable and just, and in accordance with the findings of said decree.

From certain specified portions of said decree the complainant appealed to the Appellate Court, but that court dismissed the appeal on the ground that the cause involves a freehold, and that the court therefore had no jurisdiction. From the judgment of the Appellate Court the complainant has appealed to this court and assigned the order of dismissal for error. Concurrently with said appeal, the complainant has sued out of this court a writ of error to the Superior Court, and by

stipulation of the parties, the transcript of the record of that court which was taken to the Appellate Court, and which, upon the appeal from the latter court, was, in pursuance of the statute, brought here without transcription, may stand and be treated as the proper return to the writ of error. In the proceeding by writ of error various provisions of the decree of the Superior Court are assigned for error.

Messrs. ISHAM, LINCOLN & BEALE, for the plaintiff in error.

Messrs. W. H. & J. H. MOORE & PURCELL, for the defendants in error Rand and Doane.

Mr. W. C. GOUDY, for the defendants in error Brown and Lockwood.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

That this case involves a freehold, within the meaning of the statute fixing and limiting the jurisdiction of the Appellate Courts, can not admit of serious question. The primary object of the suit was the recovery of a freehold. The original bill was filed by the complainant to obtain her dower in six lots of land in the city of Chicago of which her husband died seized, and dower, being an estate for the life of the tenant, is a freehold estate. 1 Washb. on Real Prop. (2d ed.) 254; 2 Black. Com. 119, 129. It is true that as to five of the lots the complainant's right to dower was not contested, as all the answers admitted her marriage with Martin O. Walker, the death of said Walker, and his seizin of the six lots during coverture, but as to one of the lots the answers allege an extinguishment of the complainant's dower by the sale of said lot for the satisfaction of certain mechanics' liens, and the decree sustains the averments of the answers in that respect, and holds that her dower in said lot was thus extinguished. That portion of the decree was assigned for error in the Appel-

late Court. Not only then was the recovery of a freehold the primary object of the bill, but as to one of the lots the complainant's right to such estate was directly put in issue by the pleadings and was contested upon the hearing, and upon that issue the decision of the court was adverse to her, and her appeal to the Appellate Court was prosecuted, in part at least, for the purpose of reversing that decision. It is clear therefore that the Appellate Court had no jurisdiction, and that the appeal to that court was properly dismissed. *C., B. & Q. R. R. Co.* v. *Watson,* 105 Ill. 217; *Sanford* v. *Kane,* 127 id. 591.

. The record, however, is before us on writ of error to the Superior Court, and in that proceeding various portions of the decree of that court are assigned for error. The assignment of error to which the arguments of counsel are mainly directed relates to that portion of the decree which makes the dower estate of the complainant subject to the Tucker, Brown & Co. deed of trust, and holds that the judgment for $92,171.32 recovered by the surviving partners of the firm of Tucker, Brown & Co. against Throop and McClelland in the Circuit Court of the United States for the Northern District of Illinois is secured by said deed of trust, and is a lien upon the premises in question superior to the complainant's right of dower.

The proper solution of the question thus raised must depend, in a very large degree at least, upon the construction to be placed upon the terms of the deed of trust. The circumstances under which said deed of trust was executed fully appear in the statement which precedes this opinion, but they may be more succinctly stated as follows: Prior to the execution of said deed Walker, Throop, McClelland and others composing their firm, had become liable to Brown, Tucker & Co., as was claimed by the last named firm, in a large sum of money, upon the covenants of the lease of the Ohio coal lands, both for the royalties or rents reserved and for damages for a failure to mine the amount of coal stipulated for in the lease. While this liability existed or while it was being incurred,

Throop and McClelland assigned their interest in the lease and in their firm to Walker, and Walker and the remaining members of his firm entered into an agreement with Throop and McClelland to indemnify them against all liability upon the covenants of said lease. Subsequently a suit was brought in the Circuit Court of Cook county by Tucker, Brown & Co. against Walker, Throop, McClelland and Mullins upon the covenants of said lease, and in that suit a judgment was recovered against the defendants therein for $119,637 and costs, from which judgment an appeal was taken by said defendants to this court. While said appeal was pending, Walker became desirous of having his other real estate in Cook county, of which he then seems to have been owning a considerable amount, released from the lien of said judgment; and to obtain said release, he executed to a trustee, for the benefit of Tucker, Brown & Co., the said deed of trust. In that instrument it was declared that the premises therein described were conveyed to said trustee in trust to secure to the owners of said judgment, the payment of any execution that might be issued thereon, in case the judgment should be affirmed by this court, and, in case of the reversal of said judgment, to secure the payment of any judgment that might be thereafter ultimately rendered in said suit, "or ultimately rendered in any other suit that may be hereafter brought, and founded on the covenants contained in the indenture of demise set forth in the pleadings in said suit, and upon which covenants the said suit or action is founded." Said judgment pending on appeal in this court was reversed, and the suit in which it was rendered was abandoned, and no further judgment was rendered therein. Walker in the meantime died, and the surviving members of the firm of Tucker, Brown & Co. thereupon brought another suit in the Federal Court upon the covenants of said lease against Throop, McClelland and Mullins, the surviving members of Walker's firm, and in that suit the judgment in controversy was recovered.

The contention is, that the last named judgment is neither within the terms nor meaning of the deed of trust, and should therefore be held to be no incumbrance upon the complainant's right of dower. The interpretation which the complainant seeks to put upon the above quoted language of the deed of trust is, that the "other suit" referred to must necessarily be a suit to which Walker or his legal representative is a party, and that the judgment in such suit, in order to be within the terms of the deed of trust, must be, technically, a judgment against Walker or his legal representative. It seems very plain to us that this contention can not be sustained. To do so would manifestly necessitate the interpolation of terms which the parties did not see fit to insert in their deed. It is not provided in the deed that the judgment to be secured should necessarily be a judgment against Walker or his legal representative, so as to be binding, as a judgment, upon him or his estate, the only limitation being, that it should be a judgment ultimately recovered in the suit then pending or in some suit to be thereafter brought, founded upon the covenants contained in the lease. The grantors had an undoubted right to give their deed of trust as security for such indebtedness as they saw fit to designate, and to prescribe the conditions upon which the security should become operative. We must therefore take the deed as we find it, and ascertain the nature and description of the indebtedness secured from the language the grantors have seen fit to employ. By securing the then existing judgment, or in case of its reversal, such judgment as should be ultimately rendered in the same suit, or such judgment as might be ultimately rendered in any other suit founded on the same cause of action, they manifestly secured and intended to secure the cause of action, itself, the security to become available and enforcible only after its validity and amount should be ultimately established by a judgment in the pending suit, or in some other suit to be thereafter brought founded upon the same cause of action.

As the grantors did not undertake to say who should be parties to the judgment, that was necessarily left to be settled by those rules of law which determine the proper parties to a suit at law upon the covenants in a lease. In such suit the covenantees are the proper plaintiffs and the covenantors the proper defendants, and in case of the death of a part of the plaintiffs or a part of the defendants, the suit must be prosecuted and the judgment recovered by or against the survivors. If Walker had lived, he would undoubtedly have been a necessary party to the judgment within the requirements of the deed of trust. That is so because he would have been a necessary party to such judgment by the rules of the common law. As he was dead, his surviving co-obligors were the proper parties defendant to a suit on the covenants of the lease, and for that reason they were the proper parties defendant to the judgment within the meaning of the deed.

It can not be doubted that if the suit which was pending on appeal in this court at the time the deed of trust was executed had been re-instated in the court below and prosecuted to final judgment, such judgment would have been within the terms of the deed of trust. But as Walker died while the appeal was pending, the final judgment in that suit would necessarily have been rendered against his co-obligors alone. It would have been in favor of precisely the same plaintiffs and against the same defendants who were parties to the judgment actually recovered in the subsequent suit in the Federal Court. The first suit was brought by the members of the firm of Tucker, Brown & Co. against Walker, Throop, McClelland and Mullins, Cutting, one of the members of Walker's firm being then dead. When the second suit was brought, Walker and a part of the members of the firm of Tucker, Brown & Co. were dead, and the suit was therefore brought by the surviving members of the firm of Tucker, Brown & Co. against Throop, McClelland and Mullins. Mullins, it is true, was not served with process and did not appear, and no judgment was rendered against

him, but that circumstance, so far as we can see, has no bearing upon the question under consideration. The judgment was rendered against Throop and McClelland, and they being the only defendants against whom, under the rules of law, a judgment in said suit could be rendered, it was clearly such judgment as was contemplated by the deed of trust.

But it is claimed on behalf of the complainant that, even if her right of dower was originally subject to the lien of the deed of trust, it has since become discharged from such lien. As bearing incidentally upon the question here raised is the further proposition which is insisted upon by the complainant. and which we will first consider, that she executed said deed of trust in the character of surety for her husband, and that her rights are to be determined in accordance with the rules of law applicable to that relation. The deed of trust appears to have been executed by both Martin O. Walker and the complainant, but as the instrument contains no personal covenant on the part of the grantors or either of them to pay the indebtedness secured, the relation of surety, if such was the relation assumed by the complainant, must result wholly from the fact that she, by joining with her husband in the execution of the deed of trust, mortgaged her own property or property rights as security for her husband's indebtedness.

The only right in the premises conveyed by the deed which she could possibly claim at the time that instrument was executed, was an inchoate right of dower. The circumstances of this case, however, as they appear to us from the record, are such, that we are not called upon to decide whether a wife, who, for the mere purpose of relinquishing her inchoate right of dower, joins with her husband in the execution of a mortgage given to secure his debt, thereby becomes, in any legal sense, his surety. The record, as we are compelled to construe it, seems to show that, at the time the complainant signed and acknowledged the deed of trust, she had, as against the parties secured, no right of dower whatever. The deed of trust and

its acknowledgment by Martin O.'Walker both bear date nearly a month prior to the marriage of the complainant with said Walker. There is no evidence in the record, beyond what is furnished by the instrument itself, showing the date of the delivery of the deed to the grantees, and under these circumstances the legal presumption must prevail that it was delivered on the day of its date. *Hardin* v. *Crate,* 78 Ill. 533; *Hardin* v. *Osborne,* 60 id. 93; *Deininger* v. *McConnel,* 41 id. 227; *Jayne* v. *Gregg,* 42 id. 413; *Darst* v. *Bates,* 51 id. 439. Adopting that presumption, as in the absence of countervailing evidence we must, it follows that at the date of the complainant's marriage with Walker, the deed of trust had already been executed and delivered, and that she acquired by her marriage no right of dower which was not subject and subordinate to the deed. She had therefore nothing to convey or relinquish. The fact that the parties apparently out of superabundant caution saw fit, after her marriage, to have her also execute the deed and have her and her husband join in a new acknowledgment of it, added nothing whatever to its legal effect. As she therefore relinquished no legal interest in the premises conveyed, either present or prospective, there is no basis for the contention that in executing the deed, she assumed the position or acquired the rights of a surety.

Eliminating that claim then from our consideration, upon what ground can it be pretended that the complainant's dower has been discharged from the lien of the deed of trust? It is insisted, in the first place, that the decision of this court on the appeal from the first Tucker, Brown & Co. judgment was an adjudication that there was in fact a complete defense to Tucker, Brown & Co.'s action upon the covenants of said lease, and, consequently, that they had no right to recover any judgment to which the security of the deed of trust could apply. A brief examination of the record will demonstrate that such was not the effect of the decision, the question decided being as to the legal sufficiency of certain pleas interposed by the

defendants in the court below, and which had been held insufficient on demurrer.

In the trial court the defendants had pleaded certain pleas in bar, setting up, 1, an eviction of the lessees by the lessors from a portion of the demised premises; 2, an unlawful detention from the lessees by the lessors of a portion of the demised premises, and, 3, a plea of set-off of the rental value of the premises so detained from the lessees. To these pleas a demurrer was sustained by the trial court, and the question decided by this court was, that said pleas presented a good defense to the action, and that the trial court erred in sustaining the demurrer. There was no decision that said pleas were true in fact, or that they could be sustained by evidence. Those questions were left entirely open and subject to contest by the parties on any subsequent trial.

It may be observed that while said pleas were sufficiently broad to answer the entire action, they were really intended, as we gather from the arguments of the complainant's counsel in this case, to apply especially if not wholly to that portion of the plaintiff's demand which was based upon alleged breaches of the covenant as to the amount of coal which should be mined. On this subject counsel say: "It is probable that there was some indebtedness to Tucker, Brown & Co. to be measured by the amount of coal actually taken from the mines. The contest was against what seemed an unconscionable use of the covenants of the lease, under which payment was claimed for the full royalties reserved upon coal which had never been mined at all." And counsel claim that more than $60,000 of the first judgment was made up of damages so computed. The evidence before us tends to show, and we think satisfactorily shows, that the judgment now in controversy is entirely made up of royalties upon coal which had been actually mined, and interest on the sum thus found due, and that no damages whatever were given for royalties on coal not mined, that portion of the plaintiffs' claim, as it seems, having been abandoned.

It might perhaps be suggested, if necessary, that while said pleas, if sustained by proof, would, by the technical rules of the common law, constitute a defense to the plaintiffs' claim, even for their royalties upon the coal actually mined, still the defense would be one which would not specially commend itself to the conscience of a court of equity. The evidence shows that the annual rental value of the portion of the demised premises detained from the lessees did not exceed $500, while the annual royalties on the coal mined were nearly $15,000. Now that the plaintiffs have established their claim to said royalties by the judgment of a court of law, a court of equity should be measurably reluctant to interpose for the mere purpose of enabling the parties in interest to avail themselves of a defense which, as applied to the cause of action for which the judgment was actually rendered, may justly be deemed unconscionable.

But it is insisted on behalf of the complainant as a further reason why said judgment should not be enforced against her, first, that it was entered by consent, and secondly, that it was obtained by fraud and collusion. It may be doubted whether, unless the judgment is shown to be of itself inequitable, the mere fact that it was entered by consent, if it was so entered, can be at all material. But we are unable to find from the evidence that it was entered by consent. The record evidence is directly the other way. So far as the record of the trial and judgment shows, it was essentially an adversary proceeding. It there appears that the parties waived a jury and submitted the cause to the court for trial; that evidence was thereupon heard, and that the court, having heard the evidence and being sufficiently advised in the premises, found the issue for the plaintiffs and assessed their damages at the sum for which the judgment was rendered. Nor do we find any extrinsic evidence which is in our judgment sufficient to make it our duty to hold, contrary to the finding of the court below, that the judgment was the result of any agreement or consent

of the plaintiffs and defendants or their counsel. Some of the witnesses who were in a position to know the facts testify that no such agreement or consent existed, and no witness swears to such agreement, nor is it proved by collateral facts and circumstances. We are referred to a stipulation entered into prior to the entry of the judgment between the plaintiffs and defendants, by which the plaintiffs agreed that no execution upon said judgment should be levied upon the individual property of the defendants or either of them, and that the plaintiffs would, on request, release from said judgment any parcel of real estate in which the defendants or either of them had an interest, it being declared to be the understanding that said judgment should be satisfied out of the funds held by John N. Jewett and E. A. Small as the proceeds of the mine described in the declaration, and from the property belonging to Martin O. Walker at the time of his decease. There was nothing in this stipulation which can be construed into a consent by the defendants to the entry of judgment. It amounted merely to a voluntary recognition by the plaintiffs of the fact that the liability of Throop and McClelland, since the assignment of their interest in the lease to Walker, was that of mere sureties and of their right, as such sureties, to have such judgment as should be recovered, satisfied, first, out of a fund resulting from the operation of the mines, and which had been specifically set apart by those primarily liable for the debt for its payment, and, secondly, out of the estate of their principal and indemnitor, Walker. The stipulation was the embodiment of an arrangement which was eminently just and equitable, since it placed the equitable liability of the parties precisely where it had been placed by Walker's contract of indemnity, and where a court of equity would have placed it had its aid been invoked. It therefore constituted no ground of complaint for the legal representatives of Walker or those claiming title through him. If it be suggested that the consideration for the stipulation moving to the plaintiffs may have been an

agreement by the defendants to forbear to make further opposition to the entry of judgment, or that they may in fact have been thereby induced to make no further defense to the suit, the answer is, that the evidence does not warrant us in holding that the Superior Court was in error in its finding that such was not the fact.

Nor does the evidence warrant the conclusion that the judgment was obtained by the plaintiffs by fraud or collusion. Much that has been said in discussing the point last considered applies here also. The fraud and collusion charged is sought to be inferred from the stipulation above referred to by which Throop and McClelland were discharged in advance from personal liability upon the judgment to be rendered; from the contract between Brown and Doane entered into immediately after the date of the judgment; and from certain arrangements between counsel for the respective parties in relation to bringing on the trial. Without stopping here to re-state the circumstances connected with the various matters here referred to, it is sufficient to say, that, in our opinion, no one of them or all of them combined can be held sufficient to stamp the transaction as fraudulent, so as to justify us in refusing to recognize it as a valid adjudication of the claim for which the suit was brought.

In this connection it may be remarked that no reason can be perceived why the complainant could not and should not have intervened for the purpose of having a proper defense interposed. She was fully aware of the pendency of the suit, and of the necessary effect upon her own rights of the judgment which might be recovered therein, as all those matters had been set up months before by Brown in his answer to her bill. Throop and McClelland, though necessary parties to the suit, were in fact but nominal parties, the real parties in interest being their indemnitors and those in the same interest. The complainant could doubtless have intervened for the protection of her dower right, and have seen to it that the proper defenses

were interposed and the proper evidence in support of such defenses procured. This she did not do, and it is, to say the least, doubtful, whether she can now be permitted to allege the invalidity of the judgment recovered on the ground of a negligent or even intentional omission on the part of Throop and McClelland to interpose the defenses which she now claims should have been made.

We have next to consider the relations of John W. Doane to the property in question, and the rights of the complainant as affected thereby. After the death of Martin O. Walker, claims were proved against his estate aggregating about $190,-000. Doane, having had his attention called to said property, seems to have joined Samuel O. Walker, one of the heirs, and the attorneys for the heirs and the administrator in an effort to buy up said claims. The motive for engaging in this enterprise, so far as Doane was concerned, seems to have been to use the claims as a means of ultimately obtaining title to said premises. The actual negotiations for the purchase of said claims seem to have been carried on by Samuel O. Walker, and all of said claims, with the exceptions of a few amounting to about $5000 were bought up, and assignments thereof taken to Walker as trustee. Most of the money expended in said purchases was furnished by Doane. Subsequently the lots in controversy in this suit, and certain other real property belonging to the estate, were sold at administrator's sale for the payment of debts, the lots in question being struck off and sold to George C. Rand for the sum of $5000, said purchase being made by Rand, as is admitted, in the interest of and as trustee for Doane. Doane, thereupon, with a view of perfecting the title thus conveyed to Rand, applied to and obtained from the heirs of Martin O. Walker the conveyance, through certain mesne grantees, to Rand, of their interest in said property. After the administrator's sale, a dividend of eighteen and one-half per cent. was paid on the claims proved against the estate, and thereupon Samuel O. Walker repaid

to Doane all the moneys advanced by him to be used in buying up said claims, said payment being made partly in money and partly by the conveyance of the interest of said heirs in this and other property belonging to the estate. In the manner above stated, Rand, obtained the legal title to said lots, as trustee for Doane, said title being subject to the lien of the Tucker, Brown & Co. deed of trust, the mechanic's liens on lot 19, and various claims for taxes and assessments, on the one hand, and the complainant's right of dower on the other. The questions to be considered here grow out of the steps taken by Doane to protect his title as against the Tucker, Brown & Co. deed of trust.

It is strenuously claimed that the relation between Doane and the complainant is that of joint tenants, and that Doane is therefore subject to those duties and obligations to his co-tenant which that relation imposes. This contention, we think, is founded upon a misapprehension. Until dower is assigned, the dowress has no tenancy, but a mere right to have one-third of the land assigned to her in severalty. Her rights have no analogy to those of a joint tenant, and the rules applicable to that relation therefore do not apply. Doane was doubtless bound by the rules of common honesty to good faith and fair dealing, but we know of no principle by which he was compelled to sacrifice his own legal or equitable rights in order to protect those of the complainant.

It is insisted that the fund in the hands of Jewett and Small was wrongfully applied, generally, to the reduction of the deed of trust, the claim being, if we understand it correctly, that it should have been in some way appropriated to the exclusive purpose of freeing the complainant's dower from the burden of that incumbrance. There is no theory comprehensible to us upon which this contention can be sustained. Said fund consisted of moneys realized from the operation of its mines by the firm of which Walker was a member. It was consequently a part of the assets of that firm, and so was a trust

fund for the payment of the firm indebtedness, of which the Tucker, Brown & Co. claim formed a part if not the whole. Neither Walker nor his estate could be entitled to a distribution of any part of it until the firm debts were all paid, and as it lacked many thousand dollars of being sufficient to pay this particular claim, no right to distribution on behalf of the Walker estate could possibly arise. And not only was it a trust fund for the payment of the Tucker, Brown & Co. claim, but it had been specifically appropriated and set apart by the firm for its payment. Mullins, the managing partner, who was also jointly liable with Walker upon said claim as well as upon the contract of indemnity with Throop and McClelland, having the money in his hands, deposited it with Jewett and Small, as he had a right to do, to be used for the specific purpose of discharging, so far as it would go, this very debt. There was then but one appropriation of the fund which was legally possible, and that was the one which was made by the decree.

It is still further insisted that the contract of October 8, 1881, between Doane and Brown was in contravention of the duties which Doane owed to the complainant and a fraud upon her, and that it should be held, as against both Brown and Doane, to constitute a satisfaction of the judgment, to the extent of releasing the complainant's dower from the lien of the deed of trust. Without attempting to review the argument upon which this proposition is sought to be based, it is sufficient to say that we are wholly unable to feel its force. The object of Doane in entering into that contract seems to have been, to free his title to said lots from the deed of trust as cheaply as possible, and at the same time to make use of the judgment and deed of trust for the purpose of extinguishing the complainant's dower. It may be conceded that Doane should not be permitted to obtain from Brown, on behalf of his own title, a reduction of the amount of the lien, and at the same time procure an enforcement of the lien to

its full amount as against the complainant. But that the decree does not permit him to do. The decree is so framed as to give her the benefit of the same reduction which Doane has obtained for himself. The balance due on the judgment after applying the Jewett and Small fund and the sum realized from the sale by Brown of the equity of redemption in the Sears lots, at the date of the decree, was $71,493.15. By the contract Brown agreed to accept $20,000 in full satisfaction of this balance, and Doane agreed to bid that sum at the sale. The decree extends the benefits of the contract to the complainant by allowing her also to become a bidder upon the same terms, thus giving her the same benefit of the contract which Doane acquired for himself. We think that the decree in this respect is strictly equitable.

Some complaint is made of the proceedings in the mechanics' lien suits by which it is claimed that the complainant's dower in lot 19 was extinguished. Without protracting this discussion farther, we will only say on that point, that we find nothing in those proceedings of which the complainant has any just ground of complaint, and further, that we are of the opinion that by said proceedings her dower was effectually extinguished.

Some other questions are raised by counsel which we have duly considered, but which we do not deem it necessary to discuss. After a patient investigation of the record, with the aid of the elaborate and able arguments with which counsel on both sides have favored us, we have reached the conclusion that there is no material error in the record or decree of the Superior Court. Said decree will accordingly be affirmed.

*Decree affirmed.*