First National Bank *v*. National Grain Corporation.

in common by the tenants, to see that they are in proper repair. The primary duty of the landlord is to use reasonable care to see that the premises are kept reasonably safe, and his liability can only arise out of a failure in that duty. *Reardon* v. *Shimelman*, 102 Conn. 383, 386, 128 Atl. 705. To give rise to it, however, it must appear that he either knew of a defect or was chargeable with notice of it, because, had he exercised a reasonable inspection of the premises, he would have known of it. *Reardon* v. *Shimelman*, *supra*, p. 389. In this sense only can it be truly said that the landlord is under a duty to inspect the premises, and a failure to inspect them cannot give rise in itself to a liability for injuries resulting from a defective condition. Evidence as to an inspection of the premises by him has its place in the case as bearing upon the issue of actual knowledge of their condition. As far as appears, the testimony here in question was not offered for any such purpose and it was properly excluded.

There is error, the judgment is set aside, and a new trial is ordered.

In this opinion the other judges concurred.

---

THE FIRST NATIONAL BANK OF BRIDGEPORT *vs.* THE NATIONAL GRAIN CORPORATION ET ALS.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, JS.

A duly executed note and mortgage upon which suit is brought are presumably valid instruments until their invalidity is established through evidence offered by the defendant.

In this State a mortgage, to be valid and enforceable against subsequent claimants, must be so drawn that its record will disclose to them with reasonable certainty and so far as possible

First National Bank *v.* National Grain Corporation.

the real nature of the transaction, and will enable them to ascertain, either from the record itself or by the exercise of common prudence and ordinary intelligence, the extent of the incumbrance.

In the absence of fraud, it is no objection to the validity of a mortgage that the real party in interest is not the person named in the instrument as mortgagee.

A mortgage may be made to alternative or to joint mortgagees; and in the case of joint mortgagees, each holds the benefit in proportion to his claim against the mortgagor, and, even though the mortgage be invalid as to one, it may be valid as to the other.

A mortgage given to secure an antecedent debt is founded upon a valuable consideration.

A note, secured by mortgage, may be given as collateral security for a pre-existing note.

To secure its note for $30,000 to the plaintiff, the G. Co. assigned to it a note and mortgage for $83,000 which it held upon real estate owned by F, S and B. Later the equity in this real estate was transferred to the G. Co. Thereupon, to avoid any possible difficulty arising from a merger of the legal and equitable titles, the existing notes and mortgage were released and one R, who acted merely as intermediary on behalf of the plaintiff, made a new note for $27,500 (the balance of the $30,000 indebtedness) to the G. Co. which indorsed it to the plaintiff. The G. Co. then made to R a note for $83,000, secured by mortgage upon the real estate, and R assigned both note and mortgage to the plaintiff by a written instrument, duly recorded, which recited that "this assignment is given as collateral security for the payment of a note . . . of the G. Co. . . . for the sum of $27,500 . . . and also as collateral security for any or all other obligations" of the G. Co. to the plaintiff. The "other" obligations thus referred to exceeded the sum of $60,000. Several months thereafter, the G. Co. was adjudicated a bankrupt; and in the present action brought by the plaintiff to foreclose the collateral mortgage, the trustee in bankruptcy claimed that it was not valid and enforceable as against general creditors, at least beyond the unpaid balance of the $27,500-note, because the land records did not sufficiently disclose the true nature and extent of the obligations sought to be secured thereby. The trial court overruled this claim and rendered judgment of foreclosure for the plaintiff for the full amount of the collateral note. *Held* that the trial court did not err.

Argued November 6th—decided December 23d, 1925.

ACTION to foreclose a mortgage, brought to the Superior Court in Fairfield County where a demurrer

by the defendant Clifford B. Wilson, trustee, to the complaint was overruled (*Avery, J.*) and the case was tried to the court, *Nickerson, J.;* judgment rendered for the plaintiff, and appeal by the defendants. *No error.*

*Israel J. Cohn,* for the appellants (defendants).

*William H. Comley,* for the appellee (plaintiff).

HAINES, J.   This action was brought to foreclose a mortgage of $83,000 made by the defendant Grain Corporation April 5th, 1923, to secure a note of like amount.   In the history of the transaction as disclosed by the finding, it appears that the Grain Corporation, on November 8th, 1921, owed the bank $30,000, for which the bank held the unsecured note of the Grain Corporation.   At the same time the Grain Corporation was a creditor of David Feuer, Samuel Susman and Benjamin W. Brownstein for $83,000, and this was represented by a note for that sum signed by these three debtors, payable on demand, with six per cent. interest, and secured by a mortgage on real estate owned by the makers of that note.   In this situation, the Grain Corporation, on this date, for the purpose of giving the bank collateral security on its $30,000 note above referred to, assigned this $83,000 note and the mortgage to the bank, and this was duly recorded.   The assignment contained the following provisions:   "This assignment is given as collateral security for the payment of a note and the renewal thereof until fully paid of The National Grain Corporation of even date herewith for the sum of thirty thousand ($30,000) dollars payable to the order of The First National Bank of Bridgeport three months from date and endorsed by the said David Feuer, Samuel Susman and Benjamin W. Brownstein, and if

said note shall be well and truly paid according to its tenor then this deed shall be void, otherwise to remain in full force and effect." This situation, between the bank and the Grain Corporation, remained unchanged till April 5th, 1923, save that the note for $30,000 was reduced by payments to $27,500. On the last mentioned date, Feuer, Susman and Brownstein deeded their equity in the real estate to the Grain Corporation.

The question then arose between the parties as to a possible merger of the titles to the real estate and they all thereupon mutually agreed that new papers should replace the old. To carry out this plan, one Resnick was to act as an intermediary in behalf of the bank. The bank released the note of $30,000 and the mortgage and note for $83,000; the release of the mortgage being made direct to the Grain Corporation. Then Resnick signed a new note for the balance of the $30,000, being $27,500, dated April 5th, 1923, at three months, payable to the Grain Corporation, and the latter, together with Susman, Brownstein and Feuer, endorsed and delivered it to the bank. Then the Grain Corporation made a note of $83,000, secured by mortgage covering the same real estate, to Resnick. This mortgage note contained the following conditional clause: "The condition of this deed is such, that whereas the said grantor is justly indebted to the said grantee in the sum of eighty-three thousand ($83,000) dollars as evidenced by its promissory note for said sum of even date herewith, payable to the order of said grantee on demand with 6 per cent. interest, payable semi-annually."

The note of $83,000 was endorsed by Resnick, Feuer, Susman and Brownstein, and turned over to the bank, together with a separate written assignment by Resnick of both the note and mortgage, on April 5th, 1923, which assignment contained the following provisions:

"This assignment is given as collateral security for the payment of a note and the renewals thereof until fully paid of The National Grain Corporation of even date herewith for the sum of twenty-seven thousand five hundred ($27,500) dollars payable to the order of The First National Bank of Bridgeport three months from date, and endorsed by David Feuer, Samuel Susman and Benjamin W. Brownstein, all of said City of Bridgeport, and also as collateral security for any or all other obligations of the said The National Grain Corporation, and if said note and all other obligations of the said The National Grain Corporation to the said The First National Bank of Bridgeport, shall be well and truly paid according to their tenor then this deed shall be void, otherwise to remain in full force and effect."

The release and the new mortgage and the assignment were duly recorded, the last two on April 10th, 1923, on the land records of Bridgeport.

It will thus be seen that upon the completion of this transaction under date of April 5th, 1923, the bank held a note for $27,500, which was considered and treated by all parties as the primary obligation of the Grain Corporation, and as collateral security for that note and for "all other obligations" of the Grain Corporation to the bank, it held the note and mortgage of $83,000 made by the Grain Corporation. This situation was fully disclosed upon the land records of Bridgeport by the record of the mortgage, and of the assignment made in conjunction therewith.

The "other obligations" of the Grain Corporation to the bank on April 5th, 1923, were certain notes of the corporation amounting to over $60,000, but this fact of course was not discoverable upon the land records.

Save for some relatively small payments made by

the Grain Corporation to the bank, there was no change in the relations of the parties till November 23d, 1923, when the Grain Corporation was adjudicated in bankruptcy. The present action was brought by the bank February 12th, 1924, for the foreclosure of the above described mortgage of $83,000, and the trustee appointed in the bankruptcy proceedings appears in behalf of the general creditors of the Grain Corporation, and defends generally on the ground that the mortgage for $83,000 is not, so far as the general creditors are concerned, a valid and enforceable mortgage because the land records did not disclose "the real, true and entire nature, purpose, and extent of the obligations in fact sought to be secured thereby," and that in any event, this mortgage can only be held to secure the payment of the $26,500 remaining unpaid of the note of $27,500. From the adverse judgment of the trial court the defendants appeal.

Since this is the pivotal question raised by the appeal, and is properly presented by the finding as it stands, it will first be considered. It will be assumed, as admitted by defendants in their brief, "that all the parties to the present transaction acted in good faith," and all questions of fraudulent intent may be laid out of the case.

The presumption obtains in the absence of evidence to the contrary, that the note for $83,000 and the mortgage securing it are valid, subsisting obligations, and the defendants in denying the validity assumed the burden of proof. McLoughlin v. Shaw, 95 Conn. 102, 105, 111 Atl. 62.

The general rule of law in this jurisdiction, having in mind the purpose and effect of our recording system, undoubtedly is, as the defendants contend, that valid and enforceable mortgages, so far as the rights of subsequent claimants are concerned, must show by

their record with reasonable certainty the real nature of the transaction involved so far as it can be disclosed, so that such claimants may be able to determine the real facts or may be so informed that they can by common prudence and by the exercise of ordinary diligence, ascertain the extent of the incumbrance. *Lampson Lumber Co.* v. *Chiarelli,* 100 Conn. 301, 306, 123 Atl. 909; *Rosenbluth* v. *DeForest & Hotchkiss Co.,* 85 Conn. 40, 47, 81 Atl. 955; *Beach* v. *Osborne,* 74 Conn. 405, 411, 50 Atl. 1019, 1118; *Ives* v. *Stone,* 51 Conn. 446, 456; *Merrills* v. *Swift,* 18 Conn. 257, 265; *Bush* v. *Golden,* 17 Conn. 594, 601; *Hart* v. *Chalker,* 14 Conn. 77, 79; *North* v. *Belden,* 13 Conn. 376, 380.

Starting with this proposition, the defendants argue that the $83,000 mortgage in question did not show the nature of the transaction; that it was impossible for third persons to determine from the record the nature and extent of the obligation which the mortgage was intended to secure; and that the recital that the Grain Corporation was indebted to the mortgagee Resnick for $83,000 was false and misleading because there was, in point of fact, nothing whatever owed to Resnick by the Grain Corporation. The defendants overlook the decisive feature of the situation. It is a conceded fact that nothing was owing to Resnick, but Resnick's personal relation to the Grain Corporation is not of any controlling importance to a subsequent claimant. It makes no possible difference to such claimant whether the land is held to secure Resnick or some other party. The vital thing which he is entitled to know is the extent to which the land is bound and held.

In the absence of fraud, a mortgage may be held for the security of the real creditor, whether he is the party named as mortgagee or some other party, for the provisions of a mortgage are not necessarily per-

sonal to the mortgagee named. The real party in interest may be an assignee of the mortgagee or some one subrogated to his rights under the mortgage, or even a third person not answering either of these descriptions. If, for example, there are joint mortgagees it may be held void as to one without affecting its validity as to the other, and joint mortgagees will hold the benefit of the mortgage in proportion to the claim of each against the mortgagor, and even where made to alternative mortgagees, it is valid. *New England L. & T. Co.* v. *Robinson,* 56 Neb. 50, 76 N. W. 415; *Hanrion* v. *Hanrion,* 73 Kan. 25, 54 Pac. 381; *Walker* v. *Doane,* 131 Ill. 27, 22 N. E. 1006; *Tapia* v. *Demartini,* 77 Cal. 383, 19 Pac. 641; *Burnett* v. *Pratt,* 39 Mass. (22 Pick.) 556; *Gilson* v. *Gilson,* 84 Mass. (2 Allen) 115; *Seedhouse* v. *Broward,* 34 Fla. 509, 16 So. 425.

So, it has been held that where a mortgage is given to the cashier of a bank in his individual name, for the purpose of securing a debt due from the mortgagor to the bank, the mortgage is a good and valid security in favor of the bank; *Lawrenceville Cement Co.* v. *Parker,* 15 N. Y. Supp. 577; and a mortgage given to the administrator of an estate enures to the estate of which he is the representative. *Wilkins and Smith, Admrs.* v. *Sorrells,* 45 Ala. 272.

The contention of the present appellee is therefore sound, that the bank is entitled in this case to be treated as though the mortgage and note of $83,000 had been made to it direct instead of to Resnick.

Underlying this is the fact, which the appellants apparently overlook, that the debt which this mortgage was given to secure is not the $27,500 note and other claims, but a debt of $83,000 represented by the note for that amount described fully in the mortgage of record. It was not a fictitious debt, but a bona fide obligation to pay. It rested upon a valuable considera-

tion, which was the antecedent debt of $27,500 and other debts, all aggregating more than $83,000. That such antecedent debt or debts was such a valuable consideration does not admit of doubt, and it has uniformly been so held in this State. *Brush* v. *Scribner,* 11 Conn. 388, 392; *Bridgeport City Bank* v. *Welch,* 29 Conn. 475, 476; *Roberts* v. *Hall,* 37 Conn. 205, 211; *Rockville National Bank* v. *Citizens Gas Light Co.,* 72 Conn. 576, 581, 45 Atl. 361. See also 19 L. R. A. (N. S.) p. 113; 31 L. R. A. (N. S.) pp. 288, 290 (note).

When the Grain Corporation signed and delivered this note, it created a debt of $83,000, payable on demand, and resting on a valuable and sufficient consideration. This debt was the debt which the mortgage in question was given to secure, and it is fully identified and described in the mortgage of record, thus satisfying every requirement of the rule which the defendants invoke. The record furnished all the information to which subsequent claimants were entitled; it left nothing indefinite or uncertain; the real estate was incumbered at once with an obligation of $83,000 and interest.

When the evidences of this debt—the note and mortgage—were delivered to the mortgagee, the subsequent legal use of them was no concern of these claimants. It could not affect them, whether the note and mortgage were sold, given away, or used—as in this case—for collateral security. That was a matter to be governed entirely by the agreement of the parties in interest. Whoever became legally possessed of them could obtain the benefit of them by recourse to the land mortgaged, to the extent of $83,000 and interest. It must be apparent that so far as these defendants are concerned, it was quite immaterial to them what debts were thus secured by this collateral, or the amount of those debts, certainly if the amount,

as in this case, exceeded the amount of the mortgage note. The maximum obligation of the real estate was fixed in any event at $83,000 and interest.

This use of the note and mortgage for purposes of collateral is fully justified by the doctrine stated in *Hill* v. *Banks,* 61 Conn. 25, 23 Atl. 712. In that case the mortgagor owed notes aggregating $1,400. To provide collateral for that indebtedness he gave the creditor a new note for $900 with a mortgage to secure that note. The record did not disclose that the note and mortgage of $900 were intended as collateral. It was contended, as in this case, that the mortgage was invalid and unenforceable as against subsequent creditors because the real indebtedness of $1,500 was not described of record, and the same cases were cited, viz.: *North* v. *Belden,* 13 Conn. 376; *Hart* v. *Chalker,* 14 Conn. 77; *Merrills* v. *Swift,* 18 Conn. 257; and *Bramhall* v. *Flood,* 41 Conn. 68. Overruling this claim, we said (p. 29): "When we consider what the real transaction was . . . most of the difficulties suggested . . . vanish. . . . The debt evidenced by the note was not a conditional debt; nine hundred dollars was absolutely due to the plaintiff from Banks [the maker]. . . . After the transaction the nine hundred dollars of indebtedness was evidenced by two notes instead of one, but both were the notes of the debtor. The giving of the second note did not pay the first nor the debt. The payment of one note would pay both. It was all the time the same debt. . . . If he were trying to hold the property as security for more than the amount of the note, subsequent encumbrancers might well complain. But the plaintiff claims the property to be encumbered for only the amount which the defendants themselves say the mortgage indicates. They have then, precisely the security from the property which the record led them to expect."

The defendants seek various changes in the finding. So far as these refer to pure questions of fact, some are immaterial in view of our conclusions as to the legal relations of the parties, and we find no material fact which the evidence fails to justify. Many of the changes sought are either legal conclusions or mixed matters of law and fact, and most of them rest upon the defendants' views of the legal aspects of the case. We think all those facts in the finding upon which our decision of the case rests, are fully justified by the evidence as we read it.

There is no error.

In this opinion the other judges concurred.