## ROCKVILLE NATIONAL BANK *vs.* CITIZENS GAS LIGHT COMPANY.

First Judicial District, Hartford, January Term, 1900.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Negotiable bonds taken as collateral security for a pre-existing debt
  not yet payable, are taken upon a valuable consideration and in the
  usual course of business, within the meaning of the law merchant.
The holder of negotiable paper is not put upon inquiry by a knowledge
  of facts which, although capable of supporting a suspicion of some
  unknown defect, are fully consistent with a valid title in his vendor.
The plaintiff accepted certain bonds payable to bearer as collateral secu-
  rity for a note which it had discounted and thereafter renewed
  from time to time for one *R,* who was, as the plaintiff knew, the
  treasurer of the defendant and also treasurer of the company which
  acted as trustee for the bondholders.   The bonds were originally
  issued by the defendant but had been called in before maturity,
  paid, and left without cancellation in the custody of *R.*   In a suit
  to recover the amount of the bonds it was *held:* —
1. That the knowledge of the bank of *R's* dual treasurship did not as a
  matter of law charge it with knowledge that he held the bonds in
  a fiduciary capacity, or that he had obtained them by fraud.
2. That the defendant's negligence in permitting the bonds to get into
  circulation a second time estopped it from denying their validity
  in the hands of a *bona fide* purchaser.
3. That the conclusion of negligence involved in the judgment of the
  trial court, even if not imperatively demanded upon the specific
  facts found, was at least legally consistent with the facts appearing
  upon the record, and was therefore final.

Argued January 2d—decided February 13th, 1900.

ACTION to recover the amount of three $1,000 bonds issued
by the defendant and held by the plaintiff as collateral secu-
rity, brought to the Superior Court in Tolland County and
tried to the court, *Prentice, J.;* facts found and judgment

rendered for the plaintiff for $2,400, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The complaint was in the usual form to recover on negotiable paper payable to bearer. There were proceedings in reference to the pleadings which are now immaterial. The answer denied the allegations of the complaint that the bonds in suit were the obligation of the defendant, and that the plaintiff was the actual and *bona fide* holder thereof. It further alleged that prior to the possession of the bonds by the plaintiff they had been paid, satisfied and surrendered to the defendant, and had never been reissued, of which the plaintiff had notice; that the bonds were delivered to plaintiff by the defendant's treasurer, one Risley, unlawfully and fraudulently, of which fraud the plaintiff had knowledge.

The facts found are substantially as follows: Under date of December 1st, 1890, the defendant issued and placed upon the market $60,000 of its coupon bonds. Each bond was payable to bearer on December 1st, 1900, at the First National Bank, Willimantic. The coupons were payable to bearer, semi-annually, at the same bank. Each bond contained a provision that upon failure to pay any one of the interest coupons, and default continued for six months, the principal of all the bonds should immediately become due and payable. The three bonds in suit are for $1,000 each, and formed a part of this issue. Said bonds were legally binding obligations on the defendant.

To secure the payment of said bonds, the defendant conveyed its property in Willimantic to the Merchants Loan and Trust Co., as trustee, in trust for the benefit of the bondholders. This deed was duly recorded.

All of said $60,000 of bonds were placed on the market and sold for full value.

On October 1st, 1891, the defendant's stockholders met and unanimously voted to authorize a new issue of bonds amounting to the sum of $120,000, and the execution of a trust mortgage of all the defendant's property to secure the payment thereof, the details to be determined by vote of the

directors; and the use of the proceeds thereof to take up said first issue of $60,000 outstanding but not then due, and the use of the balance of the proceeds of the new issue for the general purposes of the company; and to authorize a release of the trust mortgage securing the first issue "whenever the bonds secured thereby have been paid and cancelled."

In accordance with said vote the defendant made such new issue, and one of its directors acting in its behalf exchanged $40,000 worth of said new issue with the holders of said first issue, and took the latter into his possession; and thereupon delivered the same to O. H. K. Risley, the defendant's treasurer, as the paid and satisfied obligations of the defendant. Among said bonds so received by Risley were the bonds in suit.

Said Risley then was and for some time before had been a stockholder and member of the board of directors of the defendant corporation, and also of the Merchants Loan and Trust Co. He was also treasurer of both companies; and continued so to be to the date of his death, which occurred on April 12th, 1895.

The bonds issued by the defendant were signed by said Risley as its treasurer.

After the surrender of the whole of said first issue of $60,000 had been secured and the bonds delivered into the possession of Risley as aforesaid, said Merchants Loan and Trust Co., under its corporate seal, acting by Risley its treasurer, executed a release deed of said mortgage and trust deed, given to secure said first issue of bonds, which release deed was duly recorded by the defendant. This deed recites the fact that the plaintiff had called in and paid the whole of said first issue, and had surrendered said bonds fully paid to the releasor, and thereby the trust created by said mortgage had been fully discharged.

The bonds of said first issue, before their delivery to said Risley as aforesaid, had been fully satisfied by said exchange, and were thereafter the property of the defendant. They were never reissued, and said Risley never acquired any interest therein or ownership thereof.

The defendant did not at any time, otherwise than might be implied from said action of the stockholders, vote or authorize said Risley or any one to cancel any of said first issue of bonds after the same were taken up, and none of said bonds were ever in fact cancelled previous to Risley's death.

When the second issue of bonds was made the defendant gave to the Merchants Loan and Trust Co. a trust deed of all its property, to secure the payment of said second issue.

On March 6th, 1893, the plaintiff held said Risley's note, due April 1st, 1893, for $8,500, the same being secured by the pledge of shares of capital stock in several corporations, including four shares of the capital stock of the Kansas, Chicago & St. Louis R. Co. On said day the plaintiff wrote Risley that it desired he should substitute some other collateral in place of the railroad stock. On March 30th Risley replied, forwarding his four months renewal note for $8,000 and a draft for $500, and took up his said note for $8,500 and requested the return of said railroad stock, which was sent him. On April 4th, 1893, the plaintiff wrote Risley that it did not consider the collateral sufficient, and requested him to send additional security for the payment of his said note for $8,000. In response to this request Risley, on April 8th, wrongfully, and in breach of his duty as the defendant's treasurer, sent to the plaintiff as additional security for his said $8,000 note the three bonds in suit. In consideration of said three bonds being given the plaintiff by said Risley as collateral security in addition to the other security which it already held, the plaintiff continued to discount Risley's said note, and on August 1st and December 13th, 1894, to renew the unpaid balance thereof, i. e. $3,000 in each instance, by four months renewal notes. Said note of December 13th, 1894, was the last renewal note, payable four months from date.

This last note the plaintiff now holds, and there is now due on it the sum of $2,402.92, which sum is the balance unpaid of said original indebtedness of $8,500, and the same has been a continuous obligation since said March 6th, 1893, and long before.

The plaintiff sold a portion of its collateral at its fair market value and applied the proceeds on said $3,000 note, leaving due at the time of trial said sum of $2,402.92. The remainder of the collateral held by the plaintiff, aside from the bonds in suit, had become worthless.

The plaintiff took said bonds from said Risley as collateral security for his said note, and held the same as such collateral security for his said note, and the renewals thereof, in the regular course of business, for full and valuable consideration, in perfect good faith, in the belief that they were his individual property, and without any knowledge or suspicion otherwise at any time prior to said Risley's death; and without any knowledge or suspicion that said bonds had been paid, satisfied or redeemed by the defendant.

The plaintiff, before receiving said bonds, made no inquiries to ascertain whether or not they were the property of Risley, or whether they were not the property of the defendant.

June 1st, 1895, the plaintiff duly presented for payment the coupons on said bank which fell due that day, and payment was refused. Said bonds, said coupons, and all the subsequent coupons attached to said bonds, have ever since remained unpaid.

Said Risley was a native of Rockville, and in his early life a clerk in the plaintiff bank. At the time said bonds were taken by the plaintiff he was well known personally to the plaintiff's cashier, who conducted the negotiations with him. Said cashier also knew that Risley was defendant's treasurer and treasurer of said Merchants Loan & Trust Co.

So far as appeared in evidence said Risley's reputation for integrity was, before his death, above suspicion, and his business standing irreproachable.

The claims made upon the trial and assigned as errors in the appeal, are: 1. The facts found do not support the conclusion that the bonds were taken by the plaintiff for a valuable consideration. 2. They do not support the conclusion that the plaintiff took the bonds in the usual course of business. 3. They do not support the conclusion that the plaintiff was a *bona fide* holder of the bonds. 4. They do not sup-

port the conclusion that the plaintiff was liable to any one upon the bonds, put in circulation as found after they had been paid and surrendered.

*Solomon Lucas*, for the appellant (defendant).

*Lewis Sperry* and *Charles Phelps*, for the appellee (plaintiff).

HAMERSLEY, J. Negotiable paper taken in payment of an antecedent debt is taken for a valuable consideration, within the meaning of the law merchant. *Brush* v. *Scribner*, 11 Conn. 388, 392. This is equally true where the paper is taken as security for an antecedent debt. *Bridgeport City Bank* v. *Welch*, 29 Conn. 475, 476; *Roberts* v. *Hall*, 37 Conn. 205, 212.

The defendant claims that the principle does not apply when the antecedent debt is not payable at the time the security is given, so that there is no consideration by way of forbearance. But forbearance is not the only consideration. There may be obligations imposed in respect to the collection of the note given as security. The creditor assumes the duties and responsibilities of a holder. There may be promises of further advances. The question of consideration, however, is not so much one between the creditor and the debtor, as between the creditor and maker of the note. Has the note been received "for value in the due course of business" within the meaning of the law which, on grounds of public policy, makes the payer in such case directly responsible to the holder, irrespective of intervening equities? The "value" indicated is one involved in a valid transfer of the note "in the due course of business." And so the maker's liability to the holder depends mainly upon whether the note was validly acquired according to the known usual course of trade in dealing with negotiable instruments. *Swift* v. *Tyson*, 16 Pet. 1; *Brooklyn City & N. R. Co.* v. *National Bank*, 102 U. S. 14; *Blanchard* v. *Stevens*, 3 Cush. 162.

In this case the trial court has found that the obligation

of Risley to the plaintiff was a continuing one, extending over a period of several years, witnessed by a promissory note renewed at short intervals and secured by the transfer of collateral; that shortly after one of the renewal notes had been given and before it fell due, Risley in response to a notice from the plaintiff that the collateral held had become insufficient, and a request for additional security, delivered the bonds in suit to the plaintiff as additional collateral security, and in consideration thereof the plaintiff continued to discount said note. We think the bonds so delivered were acquired in the usual course of business and for value, within the meaning of the law merchant.

The plaintiff, therefore, acted in good faith and is admittedly a *bona fide* holder, unless some of the facts in the record show that at the time of the negotiation it had knowledge of the defect in Risley's title. The trial court finds that the plaintiff had in fact no suspicion of any defect. The defendant claims that the conclusion is erroneous because, upon the special facts found, the plaintiff is in law charged with knowledge of the defect. Knowledge of facts fully consistent with a valid title, although they may be capable of supporting a suspicion of some unknown defect, would not of itself put upon the bank any duty of inquiry. The policy of the law gives to the purchaser of such instruments in the due course of business a security analogous to that enjoyed under the common law of England by a purchaser in market overt. This is demanded by the necessities of commerce. A purchaser under such circumstances acquires a valid title, notwithstanding defects in the title of the vendor, unless he has knowledge of those defects, that is, knowledge of facts which of themselves impeach the title. *Credit Co.* v. *Howe Machine Co.*, 54 Conn. 357, 384; *Arnold* v. *Lane*, 71 id. 61, 63; *Standard Cement Co.* v. *Windham Nat. Bank*, ibid. 668, 685.

The facts relied on by the defendant in the present case are these: Risley, a man so far as appears of irreproachable business standing and personally well known to the plaintiff, offers for sale as his individual property bonds payable to bearer; the plaintiff knows that he is the treasurer of the

corporation that issued the bonds and also of the corporation that holds a trust mortgage for security of the bondholders. It is idle to claim that such facts, as a matter of law, charge the plaintiff with knowledge that Risley in truth holds the bonds in a fiduciary capacity, or has obtained possession of them through a secret fraud.

The claim that the plaintiff was charged with constructive knowledge of the deed and contents of the deed releasing the trust mortgage, has no merit.

The bonds, however, although on their face still due and regular in form, had in fact been paid and surrendered to the defendant, who could not after such surrender be charged with liability to any one, unless it should reissue the bonds before maturity, or unless they should come into circulation by reason of its negligence. The defendant did not reissue them. The plaintiff claims, and the judgment of the court necessarily finds, that they were put into circulation through the defendant's negligence. That payment before maturity is not a defense, as against a *bona fide* holder, if the bonds, after such payment and while apparently still due, appeared in the market through the fault of the defendant, seems clear. The sale to the plaintiff, as valid, of bonds which bear all *indicia* of validity, but by reason of a secret defect known to the vendor are void, was an actionable wrong, and if the negligence of the defendant contributed directly to that wrong it should be liable for the damages the plaintiff thereby suffered. The bonds on their face bear the declaration of the defendant that they are unpaid; if the negligence of the defendant enabled Risley to sell them on the faith of that declaration, it should be estopped, as against an innocent purchaser, from any denial thereof. Such results are in accord with the analogies of well-settled principles of the law of negligence and estoppel.

But however this may be, the reasons of public policy which underlie the law, that he who puts his negotiable paper into circulation shall be liable to a *bona fide* holder thereof who has acquired the same for value in due course of business, whatever defense he may have if the paper were otherwise

acquired, apply with equal force whether the paper is put into circulation through the intentional act or the negligence of the maker. *Brush* v. *Scribner, supra,* pp. 391, 393.

It was the duty of the defendant when the bonds of the first issue were surrendered and the mortgage securing them was released, either to cancel them or to take substantially equivalent precautionary measures against their coming into circulation before maturity. They were not cancelled. The defendant, for a period of three years after their surrender, took no step to guard against their reappearance in the market through accident or fraud, beyond that involved in leaving them in possession of their treasurer without special instructions and without oversight. The conclusion of the trial court in respect to the existence of negligence, under such circumstances, is final, as one of fact.

Whether or not the special facts found have such decisive probative force as to legally demand the conclusion of negligence, we think it clear that such conclusion by the court is not legally inconsistent with any fact appearing in the record, and may fairly be reached without violation of that sound reason which must control in the determination of an ultimate fact from ascertained subordinate facts. *Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 159, 175. The conclusion of the trial court on this point is therefore final.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.