FINANCE COMPANY OF PENNSYLVANIA v. NEW JERSEY SHORT LINE R. CO. et al.

SAME v. TRENTON & N. B. R. CO. et al.

(District Court, D. New Jersey. February 29, 1912.)

1. CORPORATIONS (§ 461*)—POWERS—LOANING MONEY.

The certificate of incorporation of a holding company authorized it to promote and assist financially or otherwise companies or associations engaged in the construction of railroads, to aid in any manner any corporation of which any stock or bonds or securities or evidence of indebtedness were held by the corporation, to do any acts designed to protect, preserve, improve, or enhance the value of any such stock, bonds, or securities or evidence of indebtedness. *Held* to authorize the corporation to advance a part of the proceeds of its own bonds to operating companies whose stock it controlled to enable them to meet interest obligations on their bonds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1814; Dec. Dig. § 461.*]

2. CORPORATIONS (§ 478*)—HOLDING COMPANY—BONDS—COLLATERAL MORTGAGE—APPLICATION OF PROCEEDS—"COMPANY."

A holding corporation controlling the stock of certain railroad companies executed a collateral trust deed to secure bonds issued by it, which deed provided that the proceeds of the bonds should be used, not only to make purchases of stock of railroad companies, and for betterments, improvements, and extensions of their properties, but for other purposes "of company." The deed also indicated that the operating companies had an existing bonded indebtedness, and a further provision dealing with the voting power of their stocks pledged to the trustee to secure the holding company's bonds provided that such power should not be exercised to increase the capital stock of such companies, or to create any but current obligations in addition to the above, and authorized bonded indebtedness of the operating companies, except in the instances specified. *Held*, that the "company" referred to in the quoted clause was the holding company, and that the provisions of the trust mortgage were sufficient to authorize the latter to loan the proceeds of its bonds to the operating companies to enable them to pay interest coupons on their bonded indebtedness.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 478.*

For other definitions, see Words and Phrases, vol. 2, pp. 1347–1350.]

In Equity. Bill by the Finance Company of Pennsylvania against the Trenton & New Brunswick Railroad Company and others, and against the New Jersey Short Line Railroad Company and others.

On petition of J. Kearny Rice, receiver of the New York & Philadelphia Company, to have turned over to him moneys retained by a master from the proceeds of the sale of the mortgaged premises belonging to the defendant corporations as the distributive shares on certain bonds held by William A. Stern, Isaac H. Silverman, and the corporation of Stern & Silverman, on the ground that the individuals as officers and directors of the New York & Philadelphia Company diverted the moneys of the company to the payment of interest coupons of the bonds, which coupons by the terms of the mortgage foreclosed were a prior lien to the principal of the bonds. Petition dismissed.

See, also, 189 Fed. 282.

Alan H. Strong, for petitioner.
David Wallerstein, for respondents.

RELLSTAB, District Judge. [1] The question raised here is the same as that attempted to be raised in these causes on the petition of the Guaranty Trust Company of New York. The present petition is filed because it was there held that no one but the receiver of the New York & Philadelphia Company could raise the question presented by such petition. Finance Company of Pa. v. New Jersey Short Line R. Company (C. C.) 183 Fed. 830.

The receiver (present petitioner) bases his alleged equity on the same state of facts brought up by the former petition. As these, as well as the alleged equity, appear in the reported case, no further reference thereto will be made herein than is necessary to present the precise question the determination of which I find to be dispositive of the case.

The petitioner contends that the act of the directors of the New York & Philadelphia Company (hereinafter called the "Holding Company") dominated by the respondents Wm. A. Stern and Isaac H. Silverman in loaning the moneys in question to the New Jersey Short Line Railroad Company and the Trenton & New Brunswick Railroad Company, respectively (hereinafter called the "Operating Companies"), was ultra vires. The Holding Company was the owner of the stocks of the Operating Companies, and which stocks were pledged by a collateral trust deed to the Guaranty Trust Company of New York (hereinafter called the "Trustee") as security for the payment of the Holding Company's bonds. The moneys thus loaned were part of the proceeds of the bonds of such Holding Company, and were advanced to the Operating Companies to enable them to meet the interest obligations on their bonds. The charge of ultra vires is not directed to the lack of legislative powers in the Holding Company, as article 3, §§ 4 and 5, of the certificate of incorporation of such company, amply authorize the making of loans of the kind in question.

These sections, so far as necessary to be reproduced here, are as follows:

"Sec. 4. To promote and assist financially or otherwise companies or associations engaged in the construction of railroads, street railways. * * *

"Sec. 5. To aid in any manner any other corporation of which any stock

or bonds, or securities or evidences of indebtedness are held by this corporation; to do any acts designed to protect, preserve, improve or enhance the value of any such stock, bonds or securities or evidences of indebtedness. * * * "

[2] The assertion of lack of power to make such loans is based on the limitations contained in such collateral trust deed.

Article 1, §§ 5 and 6, of this deed, are said to contain the limitations that prohibit the making of such loans, and these sections with section 5 of article 3 are the pertinent provisions to be considered in determining the question thus raised. These sections are as follows:

Article 1, § 5:

"Trustee shall forthwith certify and deliver two hundred and forty-three thousand five hundred dollars ($243,500), at par, of the said bonds, to the treasurer of company; and company covenants and agrees that the proceeds of the said bonds shall be used by company in the purchase of the stocks of said Camden & Trenton Railway Company, or other purposes of company."

"Sec. 6. From time to time hereafter Trustee shall certify and deliver to the treasurer of company additional bonds hereby secured as called for by a resolution of the board of directors of company, provided that Trustee shall have and hold hereunder twenty-seven hundred and fifty dollars at par of the stock of said Camden & Trenton Railway Company or of said Trenton & New Brunswick Railroad Company or of said New Jersey Short Line Railroad Company, or of any two or all of said companies for each one thousand dollars of bonds hereby secured at any time certified by Trustee and outstanding, and company covenants and agrees that the proceeds of said additional bonds shall be used for betterments, improvements and extensions of the properties, the stocks of which are covered by this deed of trust, and for the other purposes of company, but not for the purchase of stock of said New Jersey Short Line Railroad Company or of said Camden & Trenton Railway Company."

Article 3:

"Sec. 5. The voting power of any of the shares of the said three companies, held by Trustee hereunder, the stock of which, in whole or in part, shall be transferred to Trustee hereunder, shall never at any time, during the continuance of this indenture, either by affirmative vote or by abstaining from voting, be so exercised as to authorize, permit, sanction or concur in, or to confer upon the directors of any of said companies by any amendment of the by-laws thereof, or otherwise howsoever, the right, power or authority to authorize, permit, sanction or concur in, the increase of the capital stock of any of said companies beyond the amounts now authorized to be issued by the three said companies respectively, except for the purpose hereinafter set out for which the bonded indebtedness of the companies may be increased.

"The voting power of any of the said shares held by Trustee hereunder, the stock of which in whole or in part shall be transferred to Trustee hereunder, shall never at any time, during the continuance of this indenture, either by affirmative vote or by abstaining from voting, be so exercised as to authorize, permit, sanction or concur in, or to confer upon the directors of any of said companies by any amendment of the by-laws thereof, or otherwise howsoever, the right, power or authority to authorize, permit, sanction or concur in, the creation of any obligations (other than current obligations) in addition to the present bonded indebtedness of said companies now authorized, except for the purpose of funding, extending or retiring all or some part of their present authorized indebtedness or for new acquisitions, extensions, additions, betterments or equipments of the railroads, railways and properties of the said companies, the construction of additional railroad or railways, or the acquisition thereof by lease or otherwise, or of additional

property at a fair value not exceeding cost to the said companies; provided that by the term 'present bonded indebtedness of said companies now authorized,' used herein, is meant the full authorized bonded indebtedness of the Trenton & New Brunswick Railroad Company, to wit: the sum of one million dollars ($1,000,000)—the full authorized indebtedness of the Camden & Trenton Railway Company—to wit: the sum of one million seven hundred and fifty thousand dollars ($1,750,000)—and one million seven hundred and fifty thousand dollars ($1,750,000) of the present authorized indebtedness of the New Jersey Short Line Railroad Company, and the said three companies may issue their bonds to the amounts just stated for the purposes and under the terms provided for in the mortgages securing the same; and provided further, that company may lend moneys to any of the said companies (any part of the stock of which is pledged hereunder) upon condition that company shall take from the borrower an obligation for the repayment of the moneys so lent and shall assign said obligation to Trustee as further security hereunder, but in case said obligation is paid while Company is not in default hereunder, then company shall be entitled to collect and retain any and all sums due under said obligation."

It will be noted that in both sections 5 and 6 of article 1 the proceeds of such bonds were to be used by the Holding Company, not only to make the purchase specified in section 5 and the "betterments, improvements and extensions" of the Operating Companies' properties specified in section 6, but for the "other purposes of company."

The petitioner contends that these "other purposes" "must be confined to purposes of the mortgagor (Holding) company, which do not concern the subsidiary companies." But this manifestly is a too narrow construction of this phrase. "Company," as used in such trust deed, undoubtedly means the Holding Company; but the purposes of such company, other than those that concern the subsidiary companies, would be few and trivial, and not of such a character, in the absence of a clear and unambiguous declaration that such was the purpose, as to justify the conclusion that they, and they alone, were in mind when, after making specific mention of some of the purposes, the parties used the general direction, and for "other purposes of company." The doctrine of ejusdem generis—same kind or species—invoked by petitioner, does not require such narrow construction. The use to which these moneys were put, maintaining the credit of the Operating Companies, by rendering them financial aid, belong to the genus of those specifically enumerated. The purposes of the Holding Company were not confined to the purchasing of the stocks of the Operating Companies, or to advancing them moneys to make betterments, improvements, and extensions of the properties of such companies, but also, as we have seen by the excerpts of the charter powers, "to do any acts designed to protect, preserve, improve, or enhance the value of any such stock." Article 3, § 6, supra, bears witness to the fact that the Operating Companies had an existing bonded indebtedness. What greater act of protection and preservation of the value of its stock holdings could this Holding Company perform than advancing moneys to the Operating Companies to prevent them from defaulting in the payment of the interest coupons as they matured?

The assets of this Holding Company, and the only pledge for the payment of its bonds, were the stocks—the equity of redemption of the properties of the Operating Companies—precarious assets at best, and which would be absolutely worthless for both owner and pledgee if the right to advance moneys to tide the Operating Companies over the period of their inability to meet their interest obligations should be lacking.

The power of the Holding Company to make the loans in question, however, does not rest upon the ascertainment of the true meaning of this phrase, "other purposes of company." It was expressly empowered to make such loans by the concluding proviso of section 5, art. 3, of the trust deed. This section, to which the proviso was added, dealt with the voting power of the pledged stocks, with the purpose of preventing the impairment of such securities, and provided that such power should not be exercised to increase the capital stock of such companies, or to create any (other than current) obligations in addition to the then authorized bonded indebtedness of the Operating Companies, except in the instances therein specified. The proviso, however, had no relation to such voting power, which manifestly could be exercised only at the meeting of the stockholders of the Operating Companies, and did not serve the purpose usually found in provisos, viz., limiting the scope of the generality of language previously used. On the contrary, it relates to temporary (current) rather than permanent indebtedness; and it is not a restraint upon a general power dealt with by the section or its other proviso, but an express authorization for the making of loans by the Holding Company to the Operating Companies.

The loans for the payment of interest coupons attacked herein are within both the exception contained in the main body of such section, viz. "(other than current obligation)," and the added power of such proviso. Such power is consonant with the incorporated objects of the Holding Company and its referred-to charter powers, is consistent with the construction here given to such general authorization, "other purposes of company," and in furtherance of the comanifest scheme of the trust deed, viz., that the trustee should hold the assets of the Holding Company which it obtained by the use of the moneys derived from its bonds unimpaired by its acts; for it required the taking of "an obligation for the repayment of the moneys so lent" and the assignment thereof "to Trustee as further security hereunder." The tacking on of this proviso to the section in question rather than making it an independent section is inapt; but its position cannot control its evident meaning and purpose. As the lack of power to advance the moneys in question is basic of the alleged equities raised by the petitioner, and as such powers exist, it is not necessary to consider the other matters raised in the case.

The petition is dismissed.